(No. 36844.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD BARTLEY, Plaintiff in Error.

*Opinion filed May 25, 1962.*

JULIUS LUCIUS ECHELES, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and BASIL G. GREANIAS, State's Attorney, of Decatur, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and LLOYD LATENDRESSE, GLENN O. FULLER, and T. G. BOLEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

In 1960 the grand jury of the circuit court of Macon County returned an indictment charging the defendant, Edward Bartley, with the murder of Frank Higgins in 1951. The defendant was tried by jury and found guilty and sentenced to the penitentiary for a term of life imprison-

ment. A writ of error has issued to review the judgment of conviction.

The defendant contends that the evidence is insufficient to establish his guilt beyond a reasonable doubt. The only eyewitness who testified at the trial was Everett Brewster, who was tending bar in Frank Higgins's tavern in Decatur on February 22, 1951, the date of the crime. Brewster testified that between 2:00 and 2:20 P.M., a man came into the tavern and ordered a drink, and when Brewster looked up the man was standing just a few feet from him with a gun in his hand. The witness turned and ran to the rear of the tavern and out the back door, and on the way out he heard several shots. On direct examination Brewster was asked whether he could identify the man with the gun and he stated that he could not and stated that he did not know whether the defendant was the man he had seen in the tavern. On cross-examination, Brewster admitted that an investigator for the defendant had shown Brewster a picture of the defendant and that he had told the investigator that he had never seen that man before.

Rex Cochran testified that at the time of the shooting he was a passenger in a truck which had stopped in front of Higgins's tavern waiting for a traffic light to change. He noticed a car which was originally headed in the same direction as the truck make a U-turn and proceed at high speed in the opposite direction. Cochran testified that as this car was making the U-turn it pulled up close to the left fender of the truck and had to back up so as to complete the U-turn. Cochran testified that the defendant was a passenger in this car. On cross-examination it was brought out that Cochran was seated on the right side of the truck and that he therefore had to look past the driver of the truck and the driver of the other car to see the passenger in the other car.

A police officer testified that when he arrived at the tavern he found Higgins lying on the floor back of the bar. He had been shot in the left arm and shoulder and appeared

to be dead. The officer testified that there were several other people in the tavern and that he had talked to them. The officer testified that two of the men to whom he had spoken. were deceased at the time of the trial.

Mildred Blythe testified that at the time of the crime she lived in an apartment building which was located about two blocks from Higgins's tavern. There were five apartments in the building, two on the first floor, two on the second floor and one in the basement, and also a one-room office on the first floor. At that time, Mrs. Blythe lived in the rear apartment on the first floor and Harlan Smith rented the office in the front of the building. On the day of the crime, Mrs. Blythe had driven to Joliet to see about obtaining employment and had returned to Decatur shortly after 2:00 P.M. After stopping at the office of a loan company on business, she went to her home and arrived there about 3:00 P.M. When she started to open the door to her apartment, someone on the inside pulled the door open and when she entered the apartment she saw two men, one of whom she knew only as "Dutch," and the other man being the defendant. She testified that the defendant had a gun in his hand and told her that he had killed once that day and that he wouldn't be in any more trouble if he did it again. About 10 minutes later, Harlan Smith and Aubrey French came in and Smith told Mrs. Blythe that the men were in trouble and that they had to have a place to stay until they could get out of town. Smith and French left shortly thereafter saying they were going to check and see if there were any road blocks. About ½ or ¾ of an hour later, Smith and French returned and Smith said that road blocks had been set up and that they would have to stay in town at least until dark. Smith and French then went outside for a few minutes and changed the license plates on the car. The witness testified that she heard Smith say, "Too bad a man had to be killed for so little," and heard the defendant say, "Well, when he went around the corner or started around

the corner of the bar he pulled a gun and I had to shoot him." All of the parties remained in the apartment until around 8:00 P.M. when Mrs. Blythe and the defendant went outside and got in Mrs. Blythe's car and the defendant told her to drive to Lincoln. The man known as "Dutch" followed in another car. Mrs. Blythe drove through the city of Lincoln until the defendant told her to stop. The defendant then got out of the car and told Mrs. Blythe to head back to Decatur and keep her mouth shut and that if she did not he would find her. The witness testified that at the time of the trial Harlan Smith was dead and she didn't know where Dutch was.

Mrs. Bythe testified that she had seen the defendant a month or two before the crime. She had driven Smith to Pekin where the defendant operated a barber shop, and Smith went into the defendant's shop to get a haircut. She testified she also saw the defendant about two months after the crime. At that time, she drove to Pekin to tell the defendant that she was leaving Decatur and that the defendant had no need to worry because she wouldn't say anything about what had happened. The defendant told her to get out and never come back. She testified that she had not reported this matter to the authorities for 9 years because the defendant had threatened to find her if she told anything. She testified that she was married in 1953 and told her husband about these events shortly after the marriage. He had been trying ever since to get her to tell the authorities about it and she finally couldn't stand the pressure anymore and told her husband to call the police.

The evidence showed that at the time of the crime Mrs. Blythe was employed as a real-estate salesman for Smith and also solicited mazagine subscriptions throughout central Illinois. She was also active in a campaign to obtain passage of legislation legalizing gambling and in the course of this occupation she solicited tavern owners and people who owned slot machines. After the crime, French and Smith

operated a hotel and tavern in Joppa, Illinois. When Smith died in 1951, Mrs. Blythe operated the business in partnership with French. She bought out French's interest shortly thereafter and operated the hotel herself until she met her present husband in 1953. The evidence also showed that the witness had at one time operated a tavern in Decatur in which Smith was financially interested.

For the defense, a court reporter testified that at the preliminary hearing Mrs. Blythe had testified that she had seen the defendant in the barbershop in Pekin about 2 or 3 weeks before the crime, rather than 2 or 3 months, as she testified at the trial. It was also established that at the preliminary hearing she testified that there was not much conversation by the defendant in her apartment until French and Smith entered the room.

The defendant's sister testified that at the time of the crime the defendant was living with her in Pekin. The defendant took her and her husband to work about 6:30 in the morning. This was on a Thursday, which was the defendant's day off, since all barbershops in Pekin were closed on Thursday. The defendant picked her and her husband up from work at about 3:30 P.M. and brought them home. Before leaving in the morning the witness had asked the defendant to do the laundry and when she got home she noticed that the house had been cleaned and the laundry had been done. The defendant then fixed dinner and after dinner the defendant and two men worked until about 10:00 P.M. laying a floor. The witness testified that she could recall this particular date because it was Washington's birthday, and also a Thursday. She had looked up some old calendars and had observed that Washington's birthday fell on Thursday in 1951.

Edward Williams testified that on the day the crime was committed in Decatur, the defendant was playing cards with the witness and two other men in a tavern in Pekin. This witness likewise testified that he remembered the date be-

cause he and the defendant's attorney had gone through some almanacs from 1949 through 1960 and had discovered that the only time Washington's birthday fell on a Thursday was in 1951.

In a criminal case it is our duty to carefully examine the evidence, giving due consideration to the fact that the court and jury saw and heard the witnesses. If, after such consideration we are of the opinion that the evidence is not sufficient to establish defendant's guilt beyond a reasonable doubt, it is our duty to reverse the judgment of conviction. *(People* v. *Jefferson,* 24 Ill. 2d 398.) Here the only eye-witness to the crime admitted that he could not identify the defendant, and admitted that he had previously said that defendant was not the man he had seen in the tavern. Cochran's testimony, at the most, established that the defendant was near the scene of the crime at the time Higgins was killed. The only other evidence offered by the State was the testimony of Mrs. Blythe. Her testimony, even if believed in its entirety by the jury, affords only circumstantial evidence of the defendant's guilt of the crime with which he was charged. It established that the defendant admitted killing a man that day in a bar and that the defendant and the other men were attempting to flee from the police. These were circumstances which the jury could consider in determining the defendant's guilt. However, Mrs. Blythe's testimony was to some extent inconsistent with her testimony at the preliminary hearing. Furthermore, the fact that she delayed for 9 years in reporting these events to the authorities casts considerable doubt upon the truth of her testimony. The only reason she gave for this long delay was that she was afraid of the defendant. However, the evidence showed that in spite of her alleged fear she made a special trip to Pekin to talk to the defendant and also that she entered into partnership with French after the crime at a time when, according to her own testimony, she knew that French was an accessory

after the fact in attempting to aid the defendant escape arrest.

Opposed to the State's evidence is the alibi testimony presented by the defense which placed the defendant in Pekin at the time the crime was commited in Decatur. When it is considered that the only eyewitness saw the killer at close range and yet could not identify the defendant, and that the only other State's evidence is circumstantial and unsatisfactory, we are of the opinion that the evidence was not sufficient to establish the defendant's guilt beyond a reasonable doubt. The judgment of the circuit court of Macon County is therefore reversed.

*Judgment reversed.*